UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

      Plaintiff,

    v.

RICKY ALLEN MATLOCK,

      Defendant.

Case No. 21-cr-40028-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant Ricky Allen Matlock's *pro se* motion for a sentence reduction for "extraordinary and compelling reasons" pursuant to the First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018) (codified at 18 U.S.C. § 3582(c)(1)(A)) (Doc. 46), and his requests for appointment of counsel (Docs. 53 & 54). The Government has responded (Doc. 55), and the defendant has replied to that response (Doc. 56).

**I.     Compassionate Release**

The First Step Act expanded the sentence reduction provisions[1] of § 3582(c)(1)(A) by opening the door for a defendant to move for a reduction rather than only allowing the Director of the Bureau of Prisons ("BOP") to so move. First Step Act, § 603(b)(1) (codified at 18 U.S.C. § 3582(c)(1)(A)); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The relevant portion of the law provides:

> **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—

---

[1] The reduction provisions are often referred to as "compassionate release" because historically the grounds for reduction have included the defendant's health and/or age as "extraordinary and compelling reasons" for immediate release. Release was called "compassionate" because it was viewed as showing sympathy for an ailing or aged defendant.

        (1) in any case—

            (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

                (i) extraordinary and compelling reasons warrant such a reduction. . .

            and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. . . .

18 U.S.C. § 3582(c)(1)(A).

In exhausting administrative remedies, the defendant must have asserted the same or similar issues as grounds for relief in his request to the warden as he does in his motion for a sentence reduction. *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021). Otherwise the warden is not equipped to properly consider the defendant's request. Additionally, the Court should give substantial weight to the BOP's analysis, if there is any, regarding "extraordinary and compelling reasons" in any particular case. *Gunn*, 980 F.3d 1180.

The final clause of § 3582(c)(1)(A) requires the Court to consider whether a sentence reduction would be consistent with United States Sentencing Guideline Manual ("U.S.S.G.") § 1B1.13 (2023) (effective Nov. 1, 2023), the policy statement applicable to motions filed by the BOP Director or the defendant. That policy statement adds the provision that the defendant must not be a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13(a)(2)(2023).[2] The policy statement further defines "extraordinary and compelling

---

[2] This provision is similar, but not identical, to 18 U.S.C. § 3553(a)(2)(C), which requires the Court to consider the need for the sentence "to protect the public from further crimes of the defendant."

2

reasons" to include, alone or in combination, as relevant for this case:

> **(1) Medical Circumstances of the Defendant.**—
>> * * *
>> **(B)** The defendant is—
>>> **(i)** suffering from a serious physical or medical condition,
>>> **(ii)** suffering from a serious functional or cognitive impairment, or
>>> **(iii)** experiencing deteriorating physical or mental health because of the aging process,
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>> **(C)** The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
>> * * *
>
> **(2) Age of the Defendant.**—The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13(b) (2023).

The guideline further states that non-retroactive changes in the law may not be considered in determining whether an extraordinary and compelling reason exists, but it may be considered in determining the extent of a reduction where other extraordinary and compelling reasons exist U.S.S.G. § 1B1.13(c) (2023).  The guideline also provides that the rehabilitation of the defendant cannot, by itself, be an extraordinary and compelling reason, but it may be considered in connection with other reasons in determining whether and to what extent the Court should grant a reduction.  U.S.S.G. § 1B1.13(d) (2023).

Thus, for a defendant to be eligible for a § 3582(c)(1)(A) sentence reduction, he must have exhausted his administrative remedies,[3] and the Court must find that (1) extraordinary and compelling reasons for a reduction exist, and (2) considering the applicable factors in 18 U.S.C.

---

[3] The exhaustion requirement is not jurisdictional and may be waived by the Government.  *Gunn*, 980 F.3d at 1179.

§ 3553(a), the extraordinary and compelling reasons warrant a reduction.  18 U.S.C.

§ 3582(c)(1)(A).  The movant bears the burden of making such a showing, and the Court has

discretion to determine whether the defendant satisfied that burden.  *United States v. Newton*,

996 F.3d 485, 488 (7th Cir. 2021); *Gunn*, 980 F.3d at 1180.  The Court must ensure that any

reduction complies with U.S.S.G. § 1B1.13 (2023).

## II.    Analysis

In February 2022, Matlock pled guilty to one count of possession with intent to distribute

5 grams or more of actual methamphetamine in violation of 21 U.S.C. § 841(a) and (b)(1)(B).

At sentencing in July 2022, the Court adopted the finding of the presentence investigation report

("PSR") that Matlock's relevant conduct was 3,246.3 kilograms of converted drug weight

(comprising actual methamphetamine and a mixture and substance containing

methamphetamine).  Under U.S.S.G. § 2D1.1,[4] this yielded a base offense level of 32.  His

offense level was decreased by 3 points under U.S.S.G. § 3E1.1 for acceptance of responsibility,

yielding a total offense level of 29.  Considering Matlock's criminal history category of IV,[5] this

yielded a guideline sentencing range of 140 to 175 months.  The Court imposed a sentence of

140 months.  Matlock's projected release date is April 2, 2030.  *See* BOP, Find an Inmate,

https://www.bop.gov/inmateloc/ (visited Aug. 8, 2024).

Now, Matlock asks the Court for a reduction of his sentence to time served or home

confinement because he believes his health condition is an extraordinary and compelling reason

for relief.  He states that he fell ████████████████████

████████████████████

---

[4] Unless otherwise noted, references to the U.S.S.G. in this order are to the 2018 version.
[5] After application of retractive U.S.S.G. Amendment 821, Matlock would have one fewer criminal history point, but he would remain in criminal history category IV.

███████████████████████████████████████████████████

██████████████████████████████████████████ Additionally,

he cannot write and must get others to write court filings for him.  He acknowledges that the

BOP provided physical rehabilitation until December 2023 but has not received the necessary

physical therapy since then to enable him to walk again.  He also requests appointment of

counsel to help him prepare a better motion.

In response, the Government argues that Matlock has not shown he qualifies under

U.S.S.G. § 1B1.13(b)(1) (2023) because the diminishment in his abilities is due in great part to

his non-compliance with recovery recommendations, not lack of care from the BOP or lack of

possibility of recovery.  The Government argues that the BOP has provided adequate medical

treatment, but Matlock has not complied with medical advice, including participating in physical

therapy.  It states that Matlock's fall was the result of his consumption of K2,[6] which is

prohibited in prison, and required surgery at an outside medical facility.  Afterward, the BOP

provided him physical therapy, a special wheelchair, and someone to assist him with his daily

activities, but Matlock did not comply with medical and therapy recommendations.

Consequently, he reached a plateau of improvement and was discharged from physical therapy

with exercise instructions that he could perform without assistance.  The Government has

attached the warden's denial of Matlock's request for the BOP to file a motion on his behalf

which gives no specific reasons but generally concludes that he does not qualify under the BOP's

---

[6] The U.S. Drug Enforcement Agency describes K2 as one of many "synthetic designer drugs that are intended to mimic THC, the main psychoactive ingredient of marijuana."  DEA, Spice/K2 Synthetic Marihuana, https://www.dea.gov/factsheets/spice-k2-synthetic-marijuana (visited Aug. 8, 2024).  Adverse effects of K2 include "tachycardia (elevated heart rate), elevated blood pressure, unconsciousness, tremors, seizures, vomiting, hallucinations, agitation, anxiety, pallor, numbness, and tingling. . . .  In some instances, the adverse health effects can be long-lasting even after the user quits using the substances."  *Id.*

criteria for a reduction in sentence.  The Government also argues that he is still a danger to the

community and does not warrant release considering the § 3553(a) factors.

      A.      Extraordinary and Compelling Reason

      1.      Health Condition

The Court does not dispute that Matlock suffers from serious health conditions that stem

from a fall in prison ▇▇▇▇▇▇▇▇▇.  However, those conditions are not extraordinary and

compelling reasons for release under U.S.S.G. § 1B1.13(b)(1) (2023), especially in light of the

fact that he has failed to follow professional medical advice to facilitate his recovery.  It is true

that he suffers from a serious physical or medical condition and a serious functional impairment

that substantially diminishes his ability to provide self-care in the prison environment.  However,

he has not shown that he is not expected to recover.  Even though he may never *fully* recover

from his injuries, he has shown improvement when he complies with medical advice, and it

appears his medical providers' goals for him include activities of daily living with minimal

assistance and participation in activities at the prison.  And while it may be that Matlock is

suffering from a condition that would qualify under U.S.S.G. § 1B1.13(b)(1)(B) (2023), the

Court cannot make that finding when Matlock is sabotaging his recovery by failing to comply

with medical advice.

The Court frequently encountered a parallel situation during the COVID-19 pandemic

where inmates refused vaccines without showing they were unable to take or benefit from them,

and then claimed COVID-19 posed an "extraordinary and compelling" reason for release.  The

Seventh Circuit Court of Appeals noted, "A prisoner who can show that he is unable to receive

or benefit from a vaccine still may turn to [the compassionate release] statute, but, for the vast

majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk

of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021); *accord United States v. Kurzynowski*, 17 F.4th 756, 760-61(7th Cir. 2021); *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021) (recognizing "prisoners who have access to a vaccine cannot use the risk of COVID-19 to obtain compassionate release").  As the *Broadfield* court recognized, "a prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release.  The risk is self-incurred." *Broadfield*, 5 F.4th at 803.  In similar circumstances, the Court cannot allow Matlock's claim for release to be bolstered by his own failure to comply with medical advice to improve his medical condition.

In sum, Matlock has not carried his burden of showing extraordinary and compelling reasons for his release because of his health condition.  As of right now, at least part of his debilitation is self-inflicted.  Complying with medical advice would likely lessen the diminution of his ability to provide self-care and would likely aid in his recovery.  Until he complies—and then remains with a substantially diminished ability to care for himself—the Court cannot find he satisfies U.S.S.G. § 1B1.13(b)(2)(B) (2023).  Should Matlock begin complying with medical advice and still be substantially diminished in his ability to care for himself, he may reapply for compassionate release after exhausting his administrative remedies.

### 2.    Aging Process

To the extend Matlock believes his case falls under the policy statement describing an extraordinary and compelling reason for release because of a defendant's age, he does not meet the requirements.  *See* U.S.S.G. § 1B1.13(b)(3) (2023).  Although he is 68 years old, and may be experiencing a serious deterioration in his physical health, Matlock has not convinced the Court

that the deterioration is due to the aging process as opposed to his consumption of prohibited

substances in the prison and his failure to comply with medical advice regarding his recovery.

Furthermore, he has only served about 25 percent of his sentence, not even close to 75 percent,

the minimum he must serve before his aging process can be an extraordinary and compelling

reason for release.  .

At the risk of giving unwanted advice, the Court suggests the BOP explore any

psychological aspects contributing to Matlock non-compliance, if it is not already doing so, and

consider offering again the services that have been discontinued because of his non-compliance.

The stress of a serious injury like Matlock's and its overwhelming consequences are sure to take

a toll on his mental health and may make compliance with medical recommendations difficult.

Once he realizes that his non-compliance will not gain him early release from prison under the

compassionate release statute and gets the psychological assistance he needs, he may be more

able and willing to participate in his recovery.

B.     § 3553(a) Factors

Even if there were extraordinary and compelling reasons for compassionate release, the

§ 3553(a) factors still weigh against it.  The Court's analysis of the § 3553(a) factors at the

sentencing hearing continue to apply now.  Matlock's crime involved large amounts of

methamphetamine.  He also had a substantial history of disobeying even the most basic rules of

society about not driving under the influence or without a license.  Indeed, his failure to obey the

basic prison rule of not consuming prohibited substances is likely what got Matlock into his poor

health condition to begin with.  The public needs to be protected from his pattern of disregard for

the rules.

More important are his threats to harm his coconspirators and the person he thought was

8

the Government's confidential source.  These threats indicate he is dangerous to his community.

Although his ability to personally carry out threats may be diminished by his physical condition,

he has not given any indication his time in prison has changed this inclination to threaten

violence.  Additionally, he has currently served only about a quarter of his sentence, and

releasing him now would not adequately reflect the seriousness of his offense and would not

deter him and others from future criminal activity.  Matlock needs to serve his full sentence

(minus any sentence credit to which is entitled).  Anything less would undermine the gravity of

his offense and would not promote respect for the law.

       C.      Home Confinement

      Matlock also asks the Court, as an alternative to immediate release, to order him placed

on home confinement.  The Court does not have jurisdiction to entertain such a request.  "After a

district court sentences a federal offender, the Attorney General, through the BOP, has the

responsibility for administering the sentence."  *United States v. Wilson*, 503 U.S. 329, 335

(1992).  The BOP then has "plenary control" placement of the inmate, subject only to statutory

limits.  *Tapia v. United States*, 564 U.S. 319, 331 (2011); *United States v. Saunders*, 986 F.3d

1076, 1078 (7th Cir. 2021).  This includes the decision whether to house an inmate in a prison or

in home confinement, 18 U.S.C. § 3624(c)(2), and the Court has no jurisdiction to review that

decision, 18 U.S.C. § 3621(b) ("Notwithstanding any other provision of law, a designation of a

place of imprisonment under this subsection is not reviewable by any court.").  *Saunders*, 986

F.3d at 1078 (noting that a court lacks authority to change an inmate's place of imprisonment,

although it may recommend a different placement).  The defendant may seek relief from the

BOP by filing an administrative remedy, but the Court cannot help him.

D.      Appointment of Counsel

The Court will deny Matlock's request for appointment of counsel.  In the absence of an

extraordinary and compelling reason for relief and in light of the § 3553(a) factors, there is no

reasonable likelihood that, had counsel represented Matlock in this proceeding, the Court would

have reached a different conclusion.

**III.    Conclusion**

For all of these reasons, the Court **DENIES** Matlock's motion for a § 3582(c)(1)(A)

sentence reduction (Doc. 46) and **DENIES** his motions for appointment of counsel (Doc. 53 &

54).

**IT IS SO ORDERED.**
**DATED:  August 9, 2024**


s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**